UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM NELSON,

       Plaintiff,                                           Hon. Richard Alan Enslen

v.                                                       Case No. 1:06-CV-88

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age at the time of the ALJ's decision. (Tr. 14). She successfully completed high school, as well as one year of college, and worked previously as an assembly worker for General Motors. (Tr. 14, 67, 197-98).

Plaintiff applied for benefits on December 13, 2002, alleging that she had been disabled since May 20, 2002, due to arm and neck pain, disc herniation, arthropathies, and weak and limited range of motion. (Tr. 44-46, 61). Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 25-41). On May 12, 2005, Plaintiff appeared before ALJ Earl Witten, with testimony being offered by Plaintiff and vocational expert, Melody Henry. (Tr. 193-219). In a written decision dated September 8, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 13-20). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

In the fall of 2001, Plaintiff began experiencing shoulder and neck pain while working on the assembly line at General Motors. (Tr. 156-58). An examination of Plaintiff's shoulder

revealed no abnormalities. (Tr. 157-58). Plaintiff was diagnosed with a shoulder strain and prescribed medication and physical therapy. (Tr. 157).

X-rays of Plaintiff's cervical spine, taken on May 2, 2002, revealed degenerative changes with no evidence of osseous injuries. (Tr. 85). An MRI examination of Plaintiff's cervical spine, performed on May 12, 2002, revealed evidence of "small" central disc herniations from C2-3 through C6-7, without evidence of significant stenosis. (Tr. 84).

On June 6, 2002, Plaintiff participated in an electrodiagnostic examination, the results of which revealed no evidence of cervical radiculopathy or carpal tunnel syndrome. (Tr. 90).

On June 19, 2002, Plaintiff was examined by Dr. John Flood. (Tr. 92-93). Plaintiff reported experiencing neck pain which radiated into her trapezius muscles. (Tr. 92). Plaintiff rated her pain as 10 on a scale of 1-10. Palpation of Plaintiff's paraspinal and trapezial musculature produced tenderness. (Tr. 93). There was no evidence of spasm and motor and sensory testing was "grossly intact." *Id.* Plaintiff exhibited "no difficulties" performing fine motor movements with her hands and Plaintiff reported experiencing no arm or leg pain. (Tr. 92). The doctor also noted that "tests for upper extremity entrapment neuropathy were negative." Plaintiff was diagnosed with cervical spondylosis and cervical facet syndrome. Dr. Flood instructed Plaintiff to participate in physical therapy. *Id.* Treatment notes revealed that Plaintiff did "well in physical therapy" with "improved" range of motion and "less pain and less irritation." (Tr. 94-102).

On November 11, 2002, Plaintiff was examined by Dr. Ryan O'Connor. (Tr. 189-90). Plaintiff reported that her symptoms were "improved" with therapy and medication. (Tr. 189). An examination of Plaintiff's spine revealed "well-maintained" cervical lordosis. (Tr. 190). Plaintiff exhibited "slight[ly] decreased" range of motion in her cervical spine. She exhibited "functional"

range of motion in her shoulders, elbows, and wrists with no evidence of dysfunction. Plaintiff walked with a "normal" gait and straight leg raising was negative. Dr. O'Connor concluded that Plaintiff was experiencing myofascial pain and recommended that she participate in therapy. *Id.*

On March 5, 2003, Plaintiff participated in a consultive examination conducted by Dr. Jeoffrey Stross. (Tr. 137-38). Plaintiff reported that she was experiencing neck pain which prevented her from "do[ing] the things that she wants to do in life." (Tr. 137). She reported that her prescription medication had provided her with "some relief," but that she can lift only 1-2 pounds. *Id.* Plaintiff exhibited "reasonable" range of neck motion and "slightly" decreased shoulder strength. (Tr. 138). An examination of Plaintiff's wrists revealed "reasonable" strength and sensation and negative Tinel's sign.[1] A review of previously taken x-rays of Plaintiff's spine revealed "extensive" osteoarthritic changes as well as several "mild" disc herniations. Dr. Stross concluded that it was "unrealistic" that Plaintiff would be able to return to her previous assembly line work. *Id.*

---

[1] Tinel's test (or Tinel's sign) refers to a tingling sensation at the end of a limb produced by tapping the nerve at a site of compression or injury. This test is also used to detect the presence of carpal tunnel syndrome. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* T-140 (Matthew Bender) (1996); Frank L. Urbano, M.D., *Tinel's Sign and Phalen's Manuever: Physical Signs of Carpal Tunnel Syndrome*, Hospital Physician, July 2000 at 39.

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) cervical disc disease; (2) carpal tunnel syndrome; and (3) right shoulder degenerative joint disease. (Tr. 16). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 16-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can lift/carry up to 10 pounds frequently and 5 pounds constantly; (2) during an 8-hour workday she can sit for 6 hours and walk/stand for 6 hours; (3) she cannot perform overhead reaching; (4) she can only occasionally bend, twist, or turn; (5) she cannot crawl, squat, kneel, or climb; and (6) she cannot work near unprotected heights or around moving machinery. (Tr. 17). After reviewing the relevant

medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Melody Henry.

The vocational expert testified that there existed approximately 31,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 214-17). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). The vocational expert also testified that if Plaintiff were further limited in that she could stand/walk for only 2 hours during an 8-hour workday there still existed approximately 10,000 jobs which she could perform. (Tr. 216-17).

a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

Plaintiff asserts that her testimony regarding her pain and limitations demonstrates that she is disabled. The ALJ discounted Plaintiff's subjective allegations of pain and disability, however, concluding that "her symptoms and limitations are not credible to the extent alleged, nor supported by the objective evidence of record." (Tr. 16).

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

9

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, "the medical evidence does not demonstrate any debilitating complications from [Plaintiff's] alleged impairments." As the ALJ also noted, there is no evidence that Plaintiff has received medical treatment since March 2003. Finally, as the ALJ further observed, "[t]he only restriction in the record is from a note from Dr. Stross who performed a one-time evaluation in March 2003 and stated that [Plaintiff] could not return to her past work." In sum, there exists substantial evidence to support the ALJ's credibility determination.

  b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 31,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon her response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  November 13, 2006         /s/ Ellen S. Carmody
                     ELLEN S. CARMODY
                     United States Magistrate Judge